GEORGE T. McLAUTHLIN *vs.* CHARLES T. WILDER & another.

Suffolk. Nov. 13, 1884. — Jan. 9, 1885. FIELD, DEVENS, & COLBURN, JJ., absent.

In an action for the price of a machine, the defendant relied upon both an express and an implied warranty in the sale of the machine. The evidence was conflicting. The defendant asked for a ruling, which was appropriate to the evidence offered by him; but the judge, who tried the case without a jury, found that the facts assumed in the ruling requested were not proved, and that the express warranty relied on was not made; and refused to give the ruling. The facts found by him excluded an implied warranty. *Held,* that the defendant had no ground of exception.

CONTRACT to recover the value of an iron lathe and a steam-engine sold together by the plaintiff to the defendants, in 1872,

for $2,000. Trial in the Superior Court, without a jury, before *Pitman*, J., who allowed a bill of exceptions, in substance as follows:

The sale and delivery were admitted, and it was further admitted that the lathe was a good one, and had been used by the defendants without complaint until this time.

The defendants contended that they were not liable for the engine, or, if liable to pay anything therefor, they claimed a reduction upon the sale price, (which was nine tenths of the value of the lathe and engine together,) on account of defects and unfitness in the engine for the purpose for which it was furnished to them; on the ground, first, of a failure to fulfil an alleged express warranty or representation in the nature of a warranty; and, second, the failure and breach of an implied warranty.

The defendants also contended that they informed the plaintiff of the purpose for which they wished to use the engine, and that the plaintiff represented that the engine would run the defendants' paper-making machinery successfully.

The plaintiff denied that he represented that the engine would run the defendants' paper-making machinery successfully, and alleged that he only agreed that the engine should run well and regulate well.

It appeared in evidence that the defendants were paper manufacturers, having their mill for the manufacture of paper at Ashland, New Hampshire, which they had run with water power previously to the purchase of the engine in question; that the plaintiff was a machinist, and, among other things, made and sold steam-engines; that, before the negotiations between the parties for said engine, the defendants had not used a steam-engine, had no practical knowledge of the different kinds of steam-engines, or of the fitness of any particular kind of steam-engine to run properly their paper-making machinery or any other, and knew only that some kind of steam-engine operated successfully in running paper-making machinery. The defendants further testified, that they called upon the plaintiff, and stated to him in substance that they wanted an engine to run their paper-making machinery, and told him that they knew nothing about steam-engines, and must rely on him, and wanted

one that would run their paper-making machinery successfully and economically. It further appeared that the plaintiff showed the defendants the engine, which was not then completed and in running order, as the fly-wheel was not then made, and some other parts were not finished in condition to run, and also showed the defendants another engine, said to be like the one purchased, in working order; but the defendants testified that they did not know whether it worked properly or not, and that, upon the defendants' suggestion that a smaller engine might answer their purpose, the plaintiff said in substance that it was a variable cut-off engine, was suitable to run paper-making machinery, would do the work required as well and economically as a smaller engine, and as well as any engine would do it; that they had never seen or known of an engine as a variable cut-off engine before this; and that, upon these representations, they agreed to take the engine and lathe, at the price named, when it was completed, ready for use, and set up. The engine was finished as soon as it could be after the completion of the contract for it, which was seven or eight weeks thereafter, and set up at the defendants' place of business. The fly-wheel, in its construction and size, was one of the most important elements in the successful operation of the variable cut-off engine.

The testimony as to the bargain and the running of the engine, and as to notice by the defendants to the plaintiff to take the same away, was conflicting. The plaintiff testified, among other things, that, at the time of the sale, he made and signed a memorandum of the contract, (a copy of which was produced at the trial and admitted in evidence, and is printed in the margin,*) and read it to one of the defendants, and that it

---

* "Gentlemen: Our understanding of the bargain made with you about engine and lathe is as follows, viz.: That we are to deliver the old lathe shown you on cars in Boston, with its counter shaft, a new face plate, and an assortment of 6 turning tools and 6 drills suitable to use with said lathe. That we are to deliver the 12 & 36 variable cut-off engine shown you at our works on cars in Boston, in thorough and sound condition, cleaned up and painted, with a ten-feet fly-wheel, regulator, belt, outside pedestal, box and oil cups for main pedestal, connecting rod, valve rod and eccentric, and crosshead; that we are to furnish a mechanic to assist in setting up said engine at your mill, you paying his travelling expenses and board, and delivering the engine on the ground, and furnishing help and facilities for properly

was assented to by him, though not signed; that he did not agree to give any guaranty that the engine would run any particular machine; that the defendants did not ask him to guarantee that the engine would do their work; that he only agreed that the engine should regulate well and work economically; that he did not know what the defendants knew about engines; that he did not understand that the defendants relied on him; that, at a subsequent interview, after some controversy had arisen between the parties, one of the defendants said, "I guess we did n't talk definitely about regularity of speed;" and that the plaintiff replied, "You know very well that I never made a bargain that the engine should run this or that machine."

The defendants requested the judge to rule as follows:

"Where a manufacturer or a dealer contracts to supply an article which he manufactures or produces, or in which he deals, to be applied to a particular purpose, so that the buyer necessarily trusts to the judgment or skill of the manufacturer or dealer, there is in that case an implied term or warranty that it shall be reasonably fit for the purpose to which it is to be applied." *

The judge found as follows: 1. The sale and delivery of the articles charged is proved, and now admitted. 2. There was no rescission of the contract. 3. The plaintiff did not agree that the engine should do the defendants' work. There was no material addition to the memorandum proved in relation to any contract or matter as to the sale. 4. The engine was to be in good order and without defect, and to be such as would regulate well. 5. It was not a defective machine in itself. The judge ruled that the burden of proof of this last claim was on the defendants; and, as to the warranty implied by law, ruled that,

---

executing the work. This work of our mechanic does not include piping or other work outside of setting up said engine; but he is to start up the engine and run it two or three days when it is ready, and is to leave it in good running order, and working and regulating well, you having properly piped it and supplying it with dry steam, and in other respects giving it good usage and management. That you are to pay us, for the machinery and work above enumerated, within thirty days from delivery and execution thereof, two thousand dollars cash."

* See *Jones* v. *Just*, L. R. 3 Q. B. 197, 202, per Mellor, J.

the facts in the present case brought it under the following rule: " Where a known, described, and defined article is ordered of a manufacturer, although it is stated to be required by the purchaser for a particular purpose, still if the known, described, and defined thing is actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer;" * and in view of the testimony in this case, that the buyers had no right to trust to the judgment or skill of the vendor that this particular engine should do satisfactorily the work of the defendants' particular paper machines. They had a right only to trust to the judgment and skill of the plaintiff to furnish them a merchantable and proper engine of the kind.

The judge found and ordered judgment for the plaintiff for the full amount claimed; and the defendants alleged exceptions.

*T. L. Wakefield*, for the defendants.

*S. B. Allen*, (*W. B. Allen* with him,) for the plaintiff.

W. ALLEN, J. It is difficult to see what question of law is presented by these exceptions. The trial was by the court without a jury. The defendants asked for a ruling which was appropriate to the evidence offered by them, but which was not applicable to the facts found by the court; and the court found the facts to be such as to bring the case within a different legal proposition, the correctness of which is not controverted by the defendants. The argument for the defendants is, that, upon their evidence, the ruling they asked for should have been given. But there was conflicting evidence, and the court found that the facts assumed in the defendants' prayer were not proved, and that the representation and warranty on which the defendants relied were not made. No facts are found from which such representation or warranty can be implied; on the contrary, the facts found exclude an implied warranty.

*Exceptions overruled.*

---

* See *Jones* v. *Just*, L. R. 3 Q. B. 197, 202, per Mellor, J.